Cite as 2024 Ark. 17

# SUPREME COURT OF ARKANSAS
**No.** CV-23-73

|  |  |
|---|---|
| IN THE MATTER OF THE ESTATE OF JOHN HAROLD HAVERSTICK, DECEASED<br><br>JOHN HAVERSTICK AND JERRY HAVERSTICK<br>APPELLANTS<br><br>V.<br><br>FRANCES HAVERSTICK<br>APPELLEE | **Opinion Delivered:** February 15, 2024<br><br>APPEAL FROM THE WOODRUFF COUNTY CIRCUIT COURT [NO. 74PR-18-25]<br><br>HONORABLE CHALK S. MITCHELL, JUDGE<br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

This is an appeal of a probate order that stems from litigation regarding the estate of John Haverstick Sr. and a dispute between his surviving family members. Appellants are John Sr.'s sons, John Haverstick Jr. and Jerry Haverstick, and appellee is John Sr.'s surviving widow, Frances Haverstick. John Jr. and Jerry appeal the Woodruff County Circuit Court's order denying and dismissing John Jr. and Jerry's petition to declare the annuity-beneficiary form valid and controlling. John Jr. and Jerry argue that the circuit court erred in finding that John Sr.'s will changed the annuity's beneficiaries based on three grounds: (1) the will did not claim to change the beneficiaries; (2) even if the will claimed to change the beneficiaries, it was ineffective because it did not comply with the contractual procedure for making changes; and (3) under Act 925 of 2021, attempts to change annuity beneficiaries by will are ineffective. We have jurisdiction pursuant to Arkansas Supreme Court Rule 1-

2(a)(7), as this is a subsequent appeal following our decision in *In re Estate of Haverstick*, 2021 Ark. 233, 635 S.W.3d 482. We affirm.

In 1992, John Sr. obtained an annuity from Southern Farm Bureau. When the policy was obtained, John Sr. named the following beneficiaries: "One third to Frances P. Garner friend, one third to John A. Haverstick son and one third to Jerry Haverstick son." The annuity policy stated that the owner may change the beneficiary during the annuitant's lifetime by filing written notice to Southern Farm Bureau.

In 2000, John Sr. changed the beneficiary to the following: "The Executors or Administrators of the Estate John H. Haverstick."

In 2004, John Sr. changed the beneficiaries as follows: "In equal shares to John A. Haverstick, son, Jerry Haverstick, son, & Frances Garner, friend who survive the insured, except that if Jerry Haverstick shall Predecease the Insured leaving issue, then the share of such deceased child to his issue, per stirpes."

In 2005, John Sr. made another change to the beneficiaries: "In equal shares to John A. Haverstick, son, Jerry Haverstick, son, & Frances Haverstick, wife who survive the insured, except that if Jerry Haverstick shall Predecease the Insured leaving issue, then the share of such deceased child to his issue, per stirpes." This is the last written beneficiary change-request form filed.

On October 20, 2015, John Sr. executed his will at the office of his attorney, Thomas "Bay" Fitzhugh. The will stated in pertinent part:

> 1. In 2005 I married my long time girlfriend Frances Pearl Garner and by virtue of this marriage I am updating my will and therefore this will replaces the will executed by me on July 14, 2008.

2

. . .

5.  I have an annuity or policy with Farm Bureau and I have made my estate the beneficiary of the proceeds from that policy.  The value of the policy at the present time is approximately $400,000.00.

6. I leave to both of my sons $10,000.00 a piece to be paid out of the proceeds from that policy upon my death.

7.  The remainder of my property real, personal and mixed I give to my wife Frances should she survive me.

8.  In the event that my wife Frances should predecease me I leave all of my property to my children share and share alike.  In the event that my son Jerry should predecease me I leave his portion to his son Jeremy.

9.  I appoint my wife Frances to serve as Executrix of this my last will and testament.  In the event that she cannot serve I appoint as alternate Administrator my good friend Charlie Eldridge[.]

John Sr. died on May 2, 2018.  Neither John Jr. nor Jerry was aware of the 2015 revised will until after John Sr.'s death.  After John Sr.'s death, Frances filed a petition to probate the will and appoint Frances as personal representative.  Attorney Fitzhugh also filed an order probating the will and appointing Frances as personal representative.  John Jr. and Jerry filed a motion to contest the will and set aside the order probating the will and appointing Frances as personal representative.  Later, in an amended motion, John Jr. and Jerry argued that Frances exercised undue influence over John Sr.; isolated him from his family; and engaged in a game of secrecy and deception that she thought would result in a financial windfall for herself.

After a hearing on the motions, the circuit court found the will was valid and that there was neither a confidential relationship nor undue influence.  John Jr. and Jerry timely appealed, arguing that the circuit court did not have jurisdiction and that it improperly

3

granted Frances's motion to dismiss their motion to set aside. The court of appeals affirmed in *Haverstick v. Haverstick*, 2021 Ark. App. 260. John Jr. and Jerry filed a petition for review, which we granted. We affirmed the circuit court in *In re Estate of Haverstick*, 2021 Ark. 233, 635 S.W.3d 482. This court held that the circuit court had jurisdiction and on the basis of our de novo review, the evidence supported the circuit court's finding that there was no undue influence, even though there was a confidential relationship. *Id.*

Subsequent to our decision in *In re Estate of Haverstick*, on February 7, 2022, Frances, as personal representative, filed a petition for delivery of deposited funds in the Woodruff County Circuit Court. The petition stated that the proceeds of an annuity held by Southern Farm Bureau Life Insurance had been deposited into the registry of the circuit court. Frances sought the transfer of the funds and accumulated interest to be deposited into the estate account, to be held pending further orders of the circuit court.

On February 9, John Jr. and Jerry filed a response to the petition. John Jr. and Jerry denied that the clerk should be ordered to transfer the funds and interest to Frances and denied that the funds should be deposited into the estate account. Instead, John Jr. and Jerry asserted that the funds should remain in the registry of the circuit court because there is still a dispute as to how the funds should be divided.

On February 23, John Jr. and Jerry filed a petition to declare the annuity-beneficiary form valid and controlling. First, John Jr. and Jerry argued that under the terms of the annuity policy, John Sr. could not change the beneficiaries via his will. Second, they argued that the will does not purport to change the beneficiaries. Third, they argued that even if the will purported to change the beneficiaries, because Farm Bureau's policyholders must

4

be members, John Sr. could not change the beneficiaries via his will. Finally, they argued that Act 925 of 2021 should be applied retroactively and John Sr.'s attempt to change the annuity's beneficiaries via his will was therefore ineffective.

On March 1, Frances filed her response to the petition to declare the annuity beneficiary form valid and controlling. Frances argued that in Arkansas, a life insurance policy or an annuity can be changed through a valid will, regardless of the policy terms. Further, while Act 925 of 2021 would now clearly prohibit a change in beneficiary of an annuity via a will, it should not be applied retroactively.

After a hearing, the circuit court entered its order and amended order. The circuit court found that prior to 2021, the law in Arkansas was that the change of a beneficiary of a life insurance policy could be accomplished by will, as long as the language of the will was sufficient to identify both the insurance policy and an intent to change the beneficiary. On this issue, the circuit court found that the will sufficiently satisfied both requirements. Further, the circuit court noted that even if an insurance company specified the required method for changing a beneficiary, a subsequent will that changed the beneficiary of the life insurance policy would override the policy. The circuit court recognized that through Act 925 of 2021, testamentary changes to a life insurance or annuity contract are ineffective if the change was not made according to the terms of the affected contract. The circuit court determined that the Act did not apply retroactively here because it affects a substantial contractual right—it takes away a person's right to change the beneficiaries of that person's annuity or life insurance policy in a will. As to John Jr. and Jerry's argument that the will does not purport to change the beneficiaries, the circuit court found that "[w]hile it is true

5

that the Will doesn't change the names of the beneficiaries[,] [i]t is clear that the intent of the testator was to change how the proceeds from the Farm Bureau annuity policy would be paid upon his death." The circuit court found that in 2015, when the will was executed, and in 2018, when the will was admitted into probate, the testator could change the beneficiaries of the life insurance policy or annuity contract in their will. Thus, the circuit court denied John Jr. and Jerry's petition to declare the annuity beneficiary form valid and controlling and dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure for failure to state facts upon which relief could be granted. John Jr. and Jerry timely appealed.

We now turn to John Jr. and Jerry's argument that the circuit court erred in finding that John Sr.'s will changed the annuity's beneficiaries. This argument is based on three grounds: (1) the will did not claim to change the beneficiaries; (2) even if the will claimed to change the beneficiaries, it was ineffective because it did not comply with the contractual procedure for making changes; and (3) under Act 925 of 2021, attempts to change annuity beneficiaries by will are ineffective.

## I. *Claim to Change Beneficiaries*

First, John Jr. and Jerry argue that the will did not claim to change the beneficiaries. Specifically, John Jr. and Jerry argue that the will is unambiguous that John Sr. did not intend to change the beneficiaries. In the alternative, John Jr. and Jerry argue that even if the will is ambiguous, the other evidence showed that John Sr. did not intend to change the beneficiaries.

6

This court reviews probate proceedings de novo and will not reverse the circuit court's decision unless it is clearly erroneous. *West v. Williams*, 355 Ark. 148, 133 S.W.3d 388 (2003). A finding is clearly erroneous when, although there is evidence to support it, the appellate court, upon review of all the evidence, is left with a definite and firm conviction that an error has occurred. *Ligon v. Stewart*, 369 Ark. 380, 255 S.W.3d 435 (2007). The paramount principle in interpreting wills is that the testator's intent governs. *Pickens v. Black*, 318 Ark. 474, 885 S.W.2d 872 (1994). "The testator's intent is to be gathered from the four corners of the instrument itself." *Id*. at 480, 885 S.W.2d at 875.

We first turn to John Jr. and Jerry's argument that the will is unambiguous that John Sr. did not intend to change the beneficiaries. John Jr. and Jerry assert that John Sr.'s use of past and present tense in the will shows he did not intend to change beneficiaries. They assert that John Sr. used present tense to state what he was doing by the will and past tense to state what he did before making the will. John Jr. and Jerry state that the following are examples of present tense intentions, showing what John Sr. was doing by the will or something that existed when he made the will:

> "In the event that my wife Frances should predecease me I *leave* all of my property to my children[.]"

> "I *leave* both of my sons $10,000.00 a piece to be paid out of the proceeds from that policy upon my death."

> "The remainder of my property real, personal and mixed I *give* to my wife Frances should she survive me."

> "I *appoint* my wife Frances to serve as Executrix[.]"

> "I *have* an annuity or policy with Farm Bureau[.]"

(Emphasis added.)

7

However, John Jr. and Jerry assert that when John Sr. was speaking of what he had done previously, he used the past tense:

"Recently I *conveyed* my residence to my wife."

"Two children *were born* to me by my first wife[;] their names are John Albert Haverstick and Jerry Christopher Haverstick."

"I *have made* my estate the beneficiary of the proceeds from that policy."

(Emphasis added.)  As to John Sr.'s statement, "I have made my estate the beneficiary of the proceeds from that policy," John Jr. and Jerry argue that he was stating what he thought he had done in the past.  They argue that if he had intended to use the will to change the beneficiaries, he would have used the present tense: "I make my estate the beneficiaries of the proceeds of that policy." In sum, John Jr. and Jerry contend that John Sr. did not think he was changing the beneficiaries from Frances, John Jr., and Jerry to his estate; he thought he was stating who the beneficiary already was—the estate.

To support this argument, John Jr. and Jerry rely on *Allen v. First National Bank*, 261 Ark. 230, 547 S.W.2d 118 (1977).  John Jr. and Jerry cite *Allen* for this court's holding that the owner of a life insurance policy did not show intent to change the beneficiaries of the policy in his will.  In *Allen*, citing *Pedron v. Olds*, 193 Ark. 1026, 105 S.W.2d 70 (1937), which will be discussed in further detail below, we recognized that a policy owner's change of beneficiary can be accomplished  in his or her will.  However, as noted in *Allen*, the will at issue devised "all of my property and estate, real, personal and mixed wherever located . . . ." *Allen*, 261 Ark. at 235, 547 S.W.2d at 121.  We held that this language was insufficient to either identify the insurance policies involved or show an intent to effectuate a change of beneficiary.  *Id*.

In contrast, the will at issue here specifically identified the Farm Bureau annuity valued at $400,000. The will further set forth John Sr.'s intent to leave each of his sons $10,000 to be paid from the annuity. Thus, unlike the will in *Allen*, John Sr.'s will clearly identified the $400,000 Farm Bureau annuity and his intent to change the distribution amount that each son would receive by stating that they would each receive $10,000 from that annuity. As to whether John Sr. intended to change the names of the beneficiaries and make his estate the beneficiary of the proceeds from the annuity, the circuit court correctly found that "[w]hile the Will doesn't change the names of the beneficiaries[,] [i]t is clear that the intent of the testator was to change how the proceeds from the Farm Bureau annuity policy would be paid upon his death." As set forth above, the paramount principle in interpreting wills is that the testator's intent governs. *Pickens*, *supra*. Thus, because John Sr. clearly identified the annuity policy and his intent to change how the proceeds from the annuity would be distributed upon his death, we affirm the circuit court on this issue.

On this point, John Jr. and Jerry also argue that even if the will is ambiguous, the other evidence showed that John Sr. did not intend to change the beneficiaries. Having found that the will is unambiguous and that John Sr.'s intent was clearly set forth in his will, we need not reach this argument.

II. *Failure to Comply with Contractual Procedure*

Next, John Jr. and Jerry argue that even if the will claimed to change the beneficiaries, it was ineffective because it did not comply with the contractual procedure for making changes. Stated differently, the owner of an individual retirement annuity cannot change beneficiaries by a will and must instead follow the beneficiary change procedures

9

that the annuity company requires. John Jr. and Jerry contend that the cases relied on by the circuit court do not apply because those cases held that the owner of a life insurance policy, not an annuity, need not comply with the insurer's procedure for changing beneficiaries but may change the beneficiaries via his or her will.

The case that John Jr. and Jerry take issue with is *Pedron*, 193 Ark. 1026, 105 S.W.2d 70. In that case, Pedron had two life insurance policies, both were payable to his wife upon his death. Both policies required that a change-in-beneficiary designation be made by written notice to the company. Pedron and his wife separated. He executed a will designating his daughter as the beneficiary of the life insurance policies. At no point did Pedron attempt to change the beneficiary in the manner prescribed by the life insurance policies. A dispute arose between the wife and the daughter over the proceeds of the life insurance policies. The issue before the court was whether the will had the effect of changing the beneficiary of the life insurance policies. In holding that it did, we explained:

> It is conceded by both parties that the beneficiary named in the policies had no vested interest, because, under the provisions of the policies, he had the undoubted right to change the beneficiary in the manner therein provided. Under such circumstances, it is generally held that the beneficiary has no vested interest in the insurance during the lifetime of the insured, and such is our own holding. We do not appear to have heretofore decided the exact question here presented, that is, whether the insured may change the beneficiary, where the power to change is given in the policy without the consent of the beneficiary, by a testamentary provision, or must he pursue the method prescribed in the policy. The cases from other jurisdictions are in hopeless conflict, but *it seems to us that the better rule is with the cases that hold that the insured may change his beneficiary by valid will.*

193 Ark. at 1028, 105 S.W.2d at 71 (emphasis added). We further emphasized that the beneficiary had no vested interest during the lifetime of the insured and neither did the legatee under the will. 193 Ark. at 1028, 105 S.W.2d at 72. Both provisions became

effective upon his death. *Id*. The provision in the will conflicted with the provision in the policy designating the wife as beneficiary, and, the will being the insured's last expression on the subject, it ought to control. *Id*.

John Jr. and Jerry point out that Arkansas is in the minority of states that allow life-insurance beneficiaries to be changed by will even if the policy requires something else, and for five reasons, we should not extend our minority position to annuities. First, John Jr. and Jerry argue that *Pedron* relied on a treatise that discussed situations in which the life insurance policy does not identify a procedure for changing beneficiaries. Thus, they argue that the court mistakenly relied on that treatise to allow changes by will when a policy has a required procedure. John Jr. and Jerry assert that while *Pedron* contains a flawed analysis, they do not seek to overrule *Pedron*. Instead, they ask that we not extend this flawed analysis to annuities. Frances responds that there is no merit to the suggestion that this court was mistaken, that *Pedron* is settled law, and that the policy for allowing a testator to modify a beneficiary designation to a life insurance policy also applies to the annuity in this case.

Second, John Jr. and Jerry argue that the *Pedron* rationale is based on (a) insureds' losing their interest in life insurance policies when they stop paying premiums or the policy otherwise ends and (b) the assignability of life insurance policies. They go on to quote the following from *Pedron*: "There are numerous cases holding that *a policy may be assigned* by the insured without the consent of the beneficiary where there is no vested interest in the beneficiary, and if the insured quits paying the premiums and the policy lapses, the beneficiary loses his interest therein *along with the insured*, and we can perceive no valid reason why, *under similar conditions*, a testamentary provision may not have the effect of

11

changing the beneficiary. 193 Ark. at 1030, 105 S.W.2d at 72 (emphasis added). It is John Jr. and Jerry's position that individual retirement annuities do not present "similar conditions." Specifically, they argue that owners of an annuity may not transfer or assign the annuity; premiums are not fixed; premiums and refunds are controlled by federal law; and, unlike the policies in *Pedron*, owners do not "lose their interest" if they stop paying the premiums. Frances responds that while a life insurance policy and an individual retirement annuity are different instruments, the intent of the testator should control.

Third, John Jr. and Jerry argue that *Pedron* should not be extended because of the delay in distributing the annuity proceeds that has occurred here. They argue that John Sr. died in 2018 and the annuity proceeds still have not been distributed to the beneficiaries—a delay that would not have occurred had the circuit court enforced the contractual procedures for changing beneficiaries. Frances responds that this argument is circular, and it could just as easily be argued that the delay would not have occurred if John Jr. and Jerry had honored their father's will. Instead, they chose to appeal the circuit court's decision twice, and that is the cause of the delay.

Fourth, John Jr. and Jerry argue that requiring contractual procedures to be followed reduces uncertainty because annuity companies create standardized forms to reduce ambiguity. They argue that "[w]ills, on the other hand, come in all shapes and sizes, increase ambiguity, [and] make disposition of proceeds uncertain." Frances responds that this is another attack on *Pedron* and that clearly this court felt that the intent of the testator should be given greater weight.

12

Fifth, John Jr. and Jerry argue that *Pedron* should not be extended to annuities because other cases have declined to apply its rationale. To support this position, they rely on *Cheatham v. Modern Woodmen of America*, No. 3:10cv00170 SWW, 2011 WL 1674987 (E.D. Ark. May 4, 2011). In *Cheatham*, the United States District Court acknowledged that "Arkansas holds that a change of beneficiary can in fact be accomplished in a will so long as the language of the will is sufficient to identify the insurance policy involved and an intent to change the beneficiary." 2011 WL 1674987, at *4 (citing *Pedron*, 193 Ark. 1026, 105 S.W.2d 70; *Allen*, 261 Ark. 230, 547 S.W.2d 118). However, the district court explained that the Arkansas Supreme Court "considers annuity certificates issued by fraternal benefit societies to be in a different class from ordinary life insurance policies[.]" *Id.* at *5. Frances responds that this is a federal case and is not controlling. But more importantly, it is distinguishable from the present case as it applies specifically in the context of fraternal benefit societies. Frances points out that John Jr. and Jerry admit that Farm Bureau is not a fraternal benefit society.

Despite John Jr. and Jerry's contention that *Pedron* is flawed, *Pedron* has been reaffirmed by this court. *See Clements v. Neblett*, 237 Ark. 340, 345, 372 S.W.2d 816, 819 (1963) (relying on *Pedron*, we held that the provisions in the will designating the particular beneficiaries for certain policies had the effect of changing the beneficiary named in the insurance policies); *Harris v. Brewer*, 239 Ark. 614, 617, 390 S.W.2d 630, 632 (1965) (relying on *Pedron* and *Clements*, we held that it is well settled in this jurisdiction that insurance beneficiaries may be changed by will on the basis of the theory that the will is a later

13

expression by the insured than the designation of the beneficiary made when the policy was issued).

In a more recent case, *Nunnenman v. Estate of Grubbs*, 2010 Ark. App. 75, 374 S.W.3d 75 (2010), our court of appeals considered *Pedron* in the context of an individual retirement account. The court of appeals ultimately determined that the will at issue did not change the beneficiaries of an individual retirement account; however, in reaching this conclusion, the court recognized the following:

> There are no Arkansas cases dealing specifically with attempts to change IRA beneficiaries by will, but the cases involving insurance policy beneficiaries, cited by appellant, are analogous and instructive. It is generally held that, where a life insurance policy reserves to the insured the right to change the beneficiary but specifies the manner in which the change may be made, the change must be made in the manner and mode prescribed by the policy, and according to most courts any attempt to make such change by will is ineffectual. *See generally* Wanda Ellen Wakefield, Annotation, EFFECTIVENESS OF CHANGE OF NAMED BENEFICIARY OF LIFE OR ACCIDENT INSURANCE POLICY BY WILL, 25 A.L.R.4th 1164 (1992). However, Arkansas law is contrary to the general rule: Arkansas holds that a change of beneficiary can in fact be accomplished in a will so long as the language of the will is sufficient to identify the insurance policy involved and an intent to change the beneficiary. *Pedron v. Olds*, 193 Ark. 1026, 105 S.W.2d 70 (1937); *see also Allen v. First National Bank*, 261 Ark. 230, 547 S.W.2d 118 (1977).

*Id.* at 3–4, 374 S.W.3d at 78.

Having considered all of John Jr. and Jerry's arguments, we hold that *Pedron* applies to the present facts. Stated differently, the policy of allowing the testator to modify a beneficiary designation to life insurance policies also applies to the will at issue here, which changed how the proceeds from the annuity would be distributed upon John Sr.'s death. The will is John Sr.'s last expression on the subject, and it ought to control. *See Pedron*, 193 Ark. at 1030, 105 S.W.2d at 72. Further, we decline to extend *Cheatham*'s holding regarding

14

a fraternal benefit society to the facts before us. Therefore, we affirm the circuit court on this issue.

### III. *Act 925 of 2021*

Finally, John Jr. and Jerry argue that under Act 925 of 2021, attempts to modify annuity beneficiaries by will are ineffective. John Jr. and Jerry acknowledge that the Act was not in effect when John Sr. executed his 2015 will. However, they assert that because this Act is procedural or remedial, it should apply retroactively and we should hold that the Act mandates that an attempt to change annuity beneficiaries by a will is ineffective and that the 2005 beneficiary form controls. As an additional basis to apply the Act retroactively, they argue that this Act's purpose is to clarify rather than change the law.

We have explained the following with regard to retroactivity:

> Our rule on this point could not be more clear. Retroactivity is a matter of legislative intent. Unless it expressly states otherwise, we presume the legislature intends for its laws to apply only prospectively. Any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it, to operate prospectively only and not retroactively.

> However, this rule does not ordinarily apply to procedural or remedial legislation. The strict rule of construction does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation.

*Bean v. Office of Child Support Enf't*, 340 Ark. 286, 296–97, 9 S.W.3d 520, 526 (2000) (internal citations omitted). "Any doubt is resolved against retroactivity and in favor of prospectivity only." *Gannett River States Publ'g Co. v. Ark. Indus. Dev. Comm'n*, 303 Ark.

684, 687, 799 S.W.2d 543, 545 (1990) (quoting *Ark. Rural Med. Prac. Student Loan & Scholarship Bd. v. Luter*, 292 Ark. 259, 729 S.W.2d 402 (1987)).

With the above standards in mind, we now turn to Act 925 of 2021, codified at Ark. Code Ann. §§ 23-81-137 and 28-25-111. This Act states that this is "an act to prohibit a change to a designated or named beneficiary of a life insurance policy or annuity contract through a will; to clarify that only a change to a life insurance policy or annuity contract can change the designated or named beneficiary of a life insurance policy or annuity contract[.]"

Arkansas Code Annotated section 23-81-137, entitled "Requirements to change designated or named beneficiary of life insurance policy or annuity contract—Prohibition," states that a designated or named beneficiary of a life insurance policy or annuity contract (1) can be changed according to the terms of the life insurance policy or annuity contract; and (2) cannot be changed in a will.

Arkansas Code Annotated section 28-25-111, entitled "Life Insurance policy or annuity contract—Proceeds," provides that a testamentary change to a designated or named beneficiary of a life insurance policy or annuity contract is ineffective if the change is not made according to the terms of the life insurance policy or annuity contract.

In reviewing the Act, we note that it does not expressly state that it is to be applied retroactively. The legislature could have included language in the Act stating that it should be applied retroactively, but it did not. Further, as Frances points out, she had a vested interest in the proceeds of the annuity when John Sr. died, which was well before the enactment of the Act. *See Dinwiddie v. Metro. Life Ins. Co.*, 204 Ark. 677, 681, 163 S.W.2d

16

525, 527 (1942) (explaining that immediately upon her husband's death, her interests as beneficiary in the proceeds of the life insurance policy became vested and the same rationale applies here). Thus, we reject John Jr. and Jerry's argument that the Act simply clarifies the law. Because the Act is not merely remedial or procedural, we hold that the Act does not apply retroactively. Accordingly, we affirm the circuit court's order.

Affirmed.

WOOD, J., dissents.

**RHONDA K. WOOD, Justice, dissenting.** Because I would hold that the owner of an individual retirement annuity must change the beneficiary under the annuity, I dissent. We have no precedent that directly holds otherwise, and I would not extend it further, especially when the policy-making branch of government expressed a contrary view.

The majority is correct that Arkansas does hold that owners of life-insurance policies may change the beneficiaries through their will under current precedent.[1] That is the minority view.[2] We have never applied that to annuities, and there is no reason to do so now. Annuities are a form of contract, and within the contract there is a provision for how to change the beneficiary. Requiring parties to comply with contractual terms leads to more certainty in the law. And I would apply contractual law and end the analysis there.

---

[1] *Allen v. First Nat'l Bank*, 261 Ark. 230, 547 S.W.2d 118 (1977).

[2] Currently only Arizona and Arkansas allow changing the beneficiary by will. *See* 25 A.L.R.4th 1164 § 3[b]. (We note post Act 925 of 2021, Arkansas will no longer be one of the two states).

The decedent also knew how to change the beneficiary according to the annuity contract because he did so in 2000, 2004, and 2005 (all after the initial annuity purchase in 1992).[3]

Last, my holding coincides with the General Assembly's current determination of public policy. To change this court's past caselaw as applied to life insurance and solidify the public policy on annuities, the General Assembly enacted Act 925, expressly providing that a change of the designated beneficiary of an annuity or life-insurance policy is effective only if the change is made under the contract.[4] I need not consider whether this was retroactive, because I would find the principle stated in Act 925 correctly reflects the current state of the law as to annuities. I would not extend precedent to reach a contrary result. For these reasons, I dissent.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellants.

*The Law Offices of Watson and Watson, PLLC*, by: *Tim Watson Sr.* and *Tim Watson Jr.*

---

[3]Applying contract law does not utilize testamentary intent. However, I would also find the statement in the decedent's will that he had "made my estate the beneficiary of the proceeds of the policy" was not a declaration of intent to change beneficiaries. Instead, I would find this was merely evidence he forgot who he had made the beneficiary in his last change.

[4]Ark. Code Ann. §§ 23-81-137 and 28-25-111 (Supp. 2023).